## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID REED,

        *Plaintiff*,

    v.

LTN GLOBAL COMMUNICATIONS,
INC.,

        *Defendant*

Civil No.: 1:24-cv-03649-JRR

### MEMORANDUM OPINION

Pending before the court is Defendant LTN Global Communications, Inc.'s Motion to Dismiss and Compel Arbitration (ECF No. 9; "Defendant's Motion") and Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Dismiss and Compel Arbitration (ECF No. 23; "Plaintiff's Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

## I.  BACKGROUND

On November 30, 2021, Defendant extended a formal offer of full-time employment to Plaintiff. (Bilotto Decl., ECF No. 9-2 ¶ 4; Offer Letter, ECF No. 9-3.) Plaintiff Reed signed the offer on December 1, 2021. (Offer Letter, ECF No. 9-3.) The offer of employment was contingent upon Plaintiff executing the standard company "NDA and invention assignment agreement." *Id.* The following day, on December 2, 2021, Plaintiff electronically signed Defendant's "Employment Agreement" (ECF No. 9-4), which includes the following arbitration clause ("Arbitration Clause") and equitable remedies clause ("Equitable Remedies Clause"):

> **(a)** <u>**Arbitration**</u>**. Except as provided in subsection (b) below, I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any**

> **interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Montgomery County, Maryland in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.**
>
> **(b) <u>Equitable Remedies</u>. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5, 7 and, 9 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.**

(Employment Agreement, ECF No. 9-4 at § 11(a), (b)) (emphasis and bolding in original).  The

Employment Agreement also includes a severability clause ("Severability Clause"):

> **(c) <u>Severability</u>. If one or more of the provisions in this Agreement are deemed void by law, including, but not limited to, the covenant not to compete in Section 9, then the remaining provisions will continue in full force and effect.**

*Id.* at § 12(c) (emphasis and bolding in original).

Reed began working for Defendant as an Audio Specialist on December 6, 2021.  (Bilotto

Decl., ECF No. 9-2 ¶ 6.)  Reed's Declaration provided in support of his opposition to Defendant's

Motion attests that "[w]hile working for [Defendant], my annual salary was $65,000" and that

"[f]or the past two years, my annual gross income has been $58,843."  (Reed Decl., ECF No. 19-

1 at p. 3.)

2

As an Audio Specialist, Reed's primary responsibilities included implementing and testing Defendant's technology and providing audio broadcasting services for Defendant's customers during live events, the latter of which involved working from Plaintiff's office in Missouri and traveling to event sites in other states. (Burk Decl., ECF No. 22-1 No. ¶ 5–8.) Plaintiff "travel[ed] to different college football stadiums, basketball arenas, soccer fields, and other various venues where sports and media events are held throughout the country." (Reed Decl., ECF No. 19-1 at p. 2.)[1] Plaintiff regularly traveled with a work laptop, repair tools, and a stream deck for playing music on "bigger trucks." *Id.* Defendant also "had an independent, dedicated driver who was responsible for driving a separate truck to transport the equipment necessary for [it] to provide its broadcasting services at live events." (Burk Decl., ECF No. 22-1 ¶ 10.) Plaintiff was not required to transport such equipment, and Defendant's business does not involve selling such equipment. *Id.* ¶¶ 9, 12.

On December 18, 2024, Plaintiff initiated this action on behalf of himself and those similarly situated for "unpaid straight time and overtime compensation and related penalties and damages" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Missouri Minimum Wage Laws ("MMWL"). (ECF No. 1 ¶ 1.) On February 21, 2025, Defendant moved this court to dismiss Plaintiff's claim and compel arbitration pursuant to the Arbitration Clause in the Employment Agreement. (ECF No. 9.) On May 23, 2025, Plaintiff moved for leave to file a surreply (ECF No. 23), which Defendant opposed (ECF No. 25). The court first considers Plaintiff's Motion before turning to Defendant's Motion.

## II.    **PLAINTIFF'S PROPOSED SURREPLY**

---

[1] Citations to Plaintiff's Declaration refer to the internal CM/ECF pagination.

On May 13, 2025, Plaintiff moved for leave to file a surreply to address arguments raised by Defendant in its reply brief, specifically as to severability and the court's authority to consider the challenges raised by Plaintiff. (ECF No. 23.) Surreplies are generally neither permitted nor favored, however, the decision to permit a party to file a surreply is within the court's discretion. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom.*, 778 F.3d 463 (4th Cir. 2015). *See* Local Rule 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). "This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Boland v. Amazon.com Sales*, *Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)); *see Freeman*, 961 F. Supp. 2d at 801 ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.") (citing *Khoury*, 268 F. Supp. 2d at 605 (D. Md. 2003)). Of import here, "[w]here 'the arguments made by Defendants in their reply brief are merely responses to new arguments made by Plaintiffs in their response,' a sur-reply is not appropriate." *Freeman*, 961 F. Supp. 2d at 801 (quoting *Aguilar v. LR Coin Laudromat,* 2012 WL 1569552, at *2–*3 (D. Md. May 2, 2012)).

In view of these principles, the court is not persuaded that a surreply is warranted here. Defendant's arguments raised in reply are squarely responsive to Plaintiffs' opposition.[2] The arguments relate to the Employment Agreement and Arbitration Clause. Further, Plaintiff's surreply on the issue of severability reiterates many of his points raised in opposition that do not materially affect the court's analysis. Accordingly, the court will deny Plaintiff's Motion.

---

[2] Further still, the court does not reach Defendant's argument raised in the alternative as to the court's authority.

4

III.    **LEGAL STANDARD**

"The Federal Arbitration Act (FAA) . . . provides that arbitration contracts are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) (quoting 9 U.S.C. § 2). "When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the [FAA] entitles the defendant to file an application to stay the litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022).

As the United States Supreme Court has explained:

> The FAA was enacted in response to judicial hostility to arbitration. Section 2 of the statute makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As we have interpreted it, this provision contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to "any contract."

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50, *reh'g denied,* 143 S. Ct. 60 (2022) (footnote omitted). Thus, "[a]rbitration is a matter of contract," *see Mey*, 971 F.3d at 288 (quoting 9 U.S.C. § 2), and "[a]greements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001); *see Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) (same).

Sections 3 and 4 of the FAA "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 22 (1983).  "In the Fourth Circuit, a litigant can compel arbitration under the FAA" where it demonstrates the following:

> (1) the existence of a dispute between the parties,
> (2) a written agreement that includes an arbitration provision which purports to cover the dispute,
> (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and
> (4) the failure, neglect or refusal of the [party] to arbitrate the dispute."

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir. 1991)).  The parties' dispute here arises from the second element—that a written agreement including an arbitration provision purports to cover the dispute. *See id.*

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment."  *Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 448 (D. Md. 2024), *aff'd*, No. 24-1341, 2025 WL 1540933 (4th Cir. May 30, 2025) (quoting *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477–78 (D. Md. 2012)).  The Fourth Circuit has recently noted that "arbitration clauses are enforced in court by way of Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue."  *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023).  At the same time, where there are issues as to the validity of the agreement to arbitrate, courts analyze such motions under a summary judgment standard.[3] *Taylor v. Sunrun Inc.*, No. CV JKB-25-1381, 2025 WL 2402760, at *4 (D. Md. Aug. 19, 2025); *see Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (same).  "In applying that standard, the court is entitled to consider materials other than the complaint and its supporting

---

[3] In any event, whether analyzed under Rule 12(b)(3) or a standard akin to summary judgment, the court is permitted to review matters outside the pleadings.  As such, the distinction between the two here is, as Judge Bredar of this court has noted, "academic," as there "is no meaningful difference . . . in this context."  *Bonner v. Kimmico, Inc.*, No. CV JKB-23-2062, 2023 WL 8807029, at *2 n.2 (D. Md. Dec. 20, 2023).

documents." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). "[T]he burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute." *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 202 (4th Cir. 2025) (citation modified) (quoting *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021)); *see Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017) (same).

## IV.    ANALYSIS

Defendant argues the court should compel arbitration of this action in accordance with the Arbitration Clause. (ECF No. 9.) Plaintiff does not challenge that the Arbitration Clause exists; instead, Plaintiff challenges the enforceability of the Arbitration Clause on the following bases: (1) it lacks mutuality and fails for lack of consideration; (2) it is unconscionable; (3) Plaintiff qualifies as an exempt transportation worker under the FAA; (4) the requirement that Plaintiff bear half of the arbitration costs renders it unenforceable; and (5) it violates public policy by impermissibly limiting Plaintiff's ability to recover attorney's fees in the event of a favorable outcome in violation of the FLSA. (ECF No. 19.) The court addresses each below.

### A.  Mutuality & Consideration

Plaintiff asserts that the Arbitration Clause is illusory, lacking both mutuality and adequate consideration. (ECF No. 19 at p. 12–15.) Since arbitration is an issue of contract law, "state contract formation law determines the validity of arbitration agreements." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 603 (4th Cir. 2013). As set forth in the Employment Agreement, Maryland contract law governs. (Employment Agreement, ECF No. 9-4 § 12(a).) "To be binding and enforceable, contracts ordinarily require consideration." *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 147 (2003). "In Maryland, consideration may be established by showing 'a

benefit to the promisor or a detriment to the promisee.'" *Id.* at 148 (quoting *Harford Cnty. v. Town of Bel Air*, 348 Md. 363, 382 (1998)). "A promise becomes consideration for another promise only when it constitutes a binding obligation." *Id.* An "illusory promise" is one that, while appearing to be a promise, "does not actually bind or obligate the promisor to anything." *Id.* "Consideration for one party's binding agreement to arbitrate disputes arising under a contract typically takes the form of a comparable agreement by the other party to do the same." *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 456 (D. Md. 2020). Relevant here, "[a] mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement." *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (citing *Rickborn v. Liberty Life Insurance Co.,* 321 S.C. 291, 468 S.E.2d 292, 300 (1996)); *see Johnson v. Cir. City Stores*, 148 F.3d 373, 378 (4th Cir. 1998) (recognizing same); *Cherdak*, 437 F. Supp. 3d at 456 (recognizing same).

As an initial matter, Plaintiff takes issue with the concluding provision of the Employment Agreement set forth above the parties' signature lines: "**IN WITNESS WHEREOF, the parties have executed this Agreement on the day, month and year set forth below; provided, however, that the Company executed this Agreement solely for the purpose of entering into the covenants contained in Section 2(a)(i).**"[4] (Employment Agreement, ECF No. 9-4 at p. 10; ECF No. 19 at p. 12.) (emphasis and capitalization in original). Based on that statement, Plaintiff contends that Defendant excluded itself from the Arbitration Clause. (ECF No. 19 at p. 12.) The court does not agree. The plain language of the quoted provision confirms that the parties executed the Employment Agreement in its entirety on the date provided, and merely notes Defendant's "purpose" in doing so; it neither carves out, nor purports to exempt Defendant from, any portion of the Employment Agreement.

---

[4] Section 2(a)(i) of the Employment Agreement pertains to Defendant's provision of Confidential Information as defined by the Employment Agreement. (ECF No. 9-4 at p. 2.)

Further, as noted, Plaintiff contends that the Arbitration Clause "does not contain a mutual agreement to arbitrate." (ECF No. 19 at p. 14.)  Here, again, the court does not agree.  The language of the Arbitration Clause provides that "any dispute, claim or controversy . . . shall be settled by arbitration."  (Employment Agreement, ECF No. 9-4 § 11(a).)  Such language supports a mutual promise to submit claims to arbitration.  *See, e.g.*, *Cherdak*, 437 F. Supp. 3d at 456 (noting that the arbitration clause that contained "the general statement" that "all disputes . . . shall be resolved by a single arbitrator through binding arbitration" constitutes consideration).  By agreeing to arbitrate certain disputes, Defendant has provided consideration sufficient to satisfy Maryland's contractual requirements.  *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration . . .").

Plaintiff further urges that the Equitable Remedies Clause means that "[i]n truth, [Defendant] has given up *nothing* of value under its one-sided Arbitration Clause."  (ECF No. 19 at p. 15.)  Plaintiff's read is incorrect.  The Equitable Remedies Clause, an express exception to the Arbitration Clause, allows defendant to seek injunctive relief in court to enjoin Plaintiff's breach or threatened breach of the Employment Agreement's restrictive and intellectual property covenants through which Reed promises not to disclose Defendant's (or use another's) confidential, proprietary, or trade secret information; not to solicit Defendant's employees following termination of Reed's employment for a limited period; and not to compete with Defendant's business for a limited time in a defined geographic territory. (ECF No. 19 at p. 10; Employment Agreement, ECF No. 9-4 § 11(b).)  The Equitable Remedies Clause does not invalidate Defendant's obligation to arbitrate all disputes, including disputes for monetary damages, arising from Plaintiff's employment, termination or otherwise pertaining to the Employment Agreement.  Dispensation to seek judicial emergency injunctive relief to forestall

9

breaches of restrictive covenants is commonplace in employment contracts subject to binding arbitration, and, in any event, does not render meaningless, or enable avoidance of, Defendant's obligation to submit any such dispute to arbitration on the merits.

The court is unpersuaded that the Arbitration Clause fails for lack of consideration.

## B. Unconscionability

Plaintiff further argues the Arbitration Clause is unenforceable as unconscionable. (ECF No. 19 at p. 16-18.) "A contract is void if it is unconscionable, a term that encompasses both procedural and substantive unconscionability." *Lloyd v. Niceta*, 255 Md. App. 663, 685 (2022), *aff'd*, 485 Md. 422 (2023) (citing *Freedman v. Comcast Corp.*, 190 Md. App. 179, 207–208 (2010)). Both procedural and substantive unconscionability "must exist for a court to decline to enforce an arbitration provision." *Rankin v. Brinton Woods of Frankford, LLC*, 241 Md. App. 604, 621–22 (2019) (citing *Doyle v. Fin. Am., LLC*, 173 Md. App. 370, 383 (2007)).

Procedural unconscionability "concerns the 'process of making a contract' and includes such devices as the use of 'fine print and convoluted or unclear language,' as well as 'deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms.'" *Stewart v. Stewart*, 214 Md. App. 458, 477 (2013) (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 426–27 (2005)). "Substantive unconscionability, on the other hand, 'refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]'" *Rankin v. Brinton Woods of Frankford, LLC*, 241 Md. App. 604, 622 (2019) (quoting *Stewart*, 214 Md. App. at 477–78). "[T]he burden of demonstrating these defenses is on the party opposing arbitration . . . ." *Id.* at 621 (quoting *Henry v. Gateway, Inc.*, 187 Md. App. 647, 658 (2009)).

Plaintiff's substantive unconscionability argument mirrors his arguments as to consideration and lack of mutuality, addressed above. Likewise, the court's analysis tracks. Defendant made a binding promise to arbitrate a broad scope of claims pertaining to Reed's employment, termination, and the Employment Agreement generally. Nothing about the Employment Agreement, including the Arbitration Clause, is unreasonably or grossly favorable to Defendant.

Plaintiff's assertion of procedural unconscionability is similarly unavailing. Plaintiff relies on the following in support of his argument for procedural unconscionability: (1) Plaintiff's "unequal bargaining power"; (2) the length (12 pages) of the Employment Agreement and typeface (bold) of the Arbitration Clause; (3) "a host of unclear legal-ese"; and (4) "convoluted, unclear language." (ECF No. 19 at pp. 16–17.) The court is not persuaded.

Plaintiff's assertion of unequal bargaining power is conclusory and unsupported by legal authority or evidence. Absent more, this is insufficient to demonstrate procedural unconscionability. *Cf. Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 730 (4th Cir. 2025) (declining to infer procedural unconscionability based on, *inter alia*, "the generically described unequal bargaining power between the parties"); *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 685 (4th Cir. 2020) ("[I]f unequal bargaining power were enough to create procedural unconscionability, virtually all agreements requiring employees to arbitrate would be unconscionable as employers generally have greater bargaining power than potential employees.").

The same is true for Plaintiff's contention that the Employment Agreement is riddled with "unclear legalese" and "convoluted, unclear language." (ECF No. 19 at p. 17.) Plaintiff asserts: "There are many instances of convoluted, unclear language in the [Employment] Agreement which

easily amount to procedural unconscionability," but points only to the reference in the introductory paragraph to Defendant's agreement under § 2(a) to provide its Confidential Information to Plaintiff, which he says is "at best confusing and does not appear to impose any obligation on" Defendant. *Id.* He does not point to any language in the Arbitration Clause itself that he contends was convoluted or unclear (save the lack of mutuality, addressed above). Plaintiff fails on two fronts: the assertion of "convoluted, unclear language" is largely conclusory; and Plaintiff conflates a lack of clarity with a lack of consideration or mutuality (again, addressed above). Plaintiff's summary contention that "a lay person . . . could not be expected to understand" is likely a fair characterization of all contracts of employment and does not render the Employment Agreement unconscionable. *See Ashford, supra.* Moreover, at § 13 of the Employment Agreement, Plaintiff confirms he entered it "voluntarily" and without "undue influence"; "carefully read" it; "asked any questions needed for me to understand the terms"; "fully understand[s]" it; and "sought the advice of an attorney of my choice if I wanted to before signing." (Employment Agreement, ECF No. 9-4 at p. 9.)

Similarly, neither the length, the font, nor the typesetting of the Employment Agreement (or any clause therein) demonstrates procedural unconscionability. The Employment Agreement is a modest 12 pages of what appears to be 12-point, bold Times New Roman font, with clear, underlined headings. The Arbitration Clause is not in fine print or hidden in a mass of text. It is clearly delineated with an underlined heading: **Arbitration and Equitable Relief**. *See Stoner v. MacroGenics, Inc.*, No. SAG-23-02529, 2024 WL 327085, at *3 (D. Md. January 29, 2024) (enforcing an arbitration provision with underlined heading). That the Arbitration Clause typeface matches the rest of the Employment Agreement does not render the agreement unconscionable.

12

*See Owen v. CBRE, Inc.*, No. PWG-16-773, 2016 WL 7033973, at *6 (D. Md. December 2, 2016) (finding the lack of a distinct typeface did not render an arbitration clause unenforceable).

In all, the court finds no basis to find substantive or procedural unconscionability.

### C. Transportation Worker Exemption

Section 1 of the FAA exempts from its coverage seamen, railroad employees, and "any other class of workers engaged in foreign or interstate commerce," meaning such employees cannot be compelled to arbitrate claims pursuant to the FAA. 9 U.S.C. § 1. The Supreme Court has interpreted this exception to be limited to "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). An employee, however, need not work in the transportation industry to qualify as an exempt transportation worker. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024). To qualify as a transportation worker, however, an employee "must at least play a direct and 'necessary role in the free flow of goods' across borders." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (quoting *Circuit City Stores, Inc.*, 532 U.S. at 121). The fact that an employee transports his own tools across state lines to perform his duties does not, by itself, render him a transportation worker. *Wolford v. United Coal Company LLC*, 764 F. Supp.3d 329, 341 (W.D. Va. 2025) (holding that an electrician did not qualify as a transportation work where he carried his own "tools, protective equipment, parts and supplies needed for repairs," but was not moving people or merchandise in interstate commerce).

Plaintiff asserts that his role as an Audio Specialist falls within this exemption and, therefore, he may not be compelled to arbitrate his claims. (ECF No. 19 at pp. 18–20.) As discussed above, Plaintiff provided audio technology services for Defendant's customers at live sports and media events; and Plaintiff provided these services from Defendant's office in Liberty, Missouri, as well as at live events across the country. When traveling across state lines to an event,

Plaintiff regularly transported a work laptop, repair tools, and a stream deck with him in his car, but Defendant's equipment for events was transported separately via truck by another employee. And while Audio Specialists occasionally assemble equipment on site at live events, their primary responsibility is to provide audio broadcasting services.

Plaintiff's main argument is that, as an Audio Specialist, he necessarily had to travel to other states for work and bring Defendant's goods necessarily to its services. (ECF No. 19 at p. 18.) This case closely resembles *Wolford*. There, the Western District of Virginia explained:

> Wolford's crossing of the state line with tools needed for his shift is not the same thing as an electrician delivering out-of-state light fixtures to consumers. The repair parts and protective equipment are not goods to be delivered to the purchasers of defendants' coal products. They are incidental to his work as an electrician ensuring the machinery is in working order. As the defendants point out, the district court on remand articulated the distinction: "[T]ransport workers move people and *merchandise* in interstate commerce." *Fraga v. Premium Retail Servs., Inc.*, 704 F. Supp. 3d 289, 299 n.5 (D. Mass. 2023) (emphasis added). Wolford was not carrying tools according to a delivery order. He was doing so to fulfill his work as an electrician, which was not that of a transportation worker.

764 F. Supp. 3d at 341. The same it compelling here. Rather than moving people or merchandise across state lines, Plaintiff carried his own (minimal) equipment to fulfill his work as an Audio Specialist. This equipment was merely incidental to his work of providing audio broadcasting services at live events.

Plaintiff lists in short form multiple cases that are readily distinguishable and not persuasive here. (ECF No. 19 at pp. 19–20.) Several of the cases involve employees whose primary responsibility involved transportation and delivery of merchandise and goods to customers. *See, e.g.*, *Brock v. Flowers Foods, Inc.*, 121 F.4th 753 (10th Cir. 2024) (baked goods delivery driver); *Garate v. Lincare, Inc.*, No. 24-CV-768-CAB-MSB, 2024 WL 4140608 (S.D. Cal. Sept. 10, 2024) (delivery driver for medical equipment and supply business). These jobs and duties materially

differ from Plaintiff's role as an Audio Specialist because they necessarily require transportation of goods between and among states as a core feature of the post.

Plaintiff did not transport merchandise for sale, as Defendant does not sell audio broadcasting equipment. And while Plaintiff occasionally transported smaller pieces of equipment in his car (*e.g.*, a laptop), his primary function as an Audio Specialist was to provide audio broadcasting services, not to transport equipment or other goods in interstate commerce. *See Schuler v. B&L Systems, LLC*, No. 1:24-cv-219, 2024 WL 4035986, at *2 (W.D. Mich. Sep. 4, 2024) ("An employee does not qualify as a transportation worker for § 1 purposes if they provide a service that is removed from the actual transportation of goods."); *see also Fraga v. Premium Retail Servs., Inc.*, 704 F. Supp. 3d 289, 299 n.5 (D. Mass. 2023) ("[T]ransport workers move people and merchandise in interstate commerce.").

The other category of cases Plaintiff relies on, as Defendant notes, concerns jobs focused on the transportation of goods and people—similarly distinct from the facts here. *See, e.g.*, *Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022) (loading and unloading cargo on planes); *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1158 (9th Cir.), *cert. denied,* 145 S. Ct. 165 (2024) (loading work that facilitated the shipment of goods); *Nair v. Medline Indus., LP*, No. 23-15582, 2024 WL 4144070, at *1 (9th Cir. Sept. 11, 2024) (same); *Lopez v. Aircraft Serv. Int'l, Inc.*, 107 F.4th 1096, 1098 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 1063 (2025) (fueling passenger and cargo plans); *Fraga v. Premium Retail Servs., Inc.*, 61 F.4th 228, 230 (1st Cir. 2023) (receiving marketing and promotional material at home and transporting them to the stores for merchandising). Unlike these cases, Plaintiff's work was not focused on the transportation of goods or people across state lines.

Accordingly, the court is not persuaded that Plaintiff is a transportation worker exempt from the FAA under 9 U.S.C. § 1.

### D. Cost-Splitting and Attorney's Fees Provisions

Finally, the court turns to Plaintiff's arguments that relate to the final sentence in the Arbitration Clause: "The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses." (Employment Agreement, ECF No. 9-4 § 11(a).)  First, Plaintiff contends that this provision renders the entire Arbitration Clause unenforceable because it imposes prohibitive expenses that effectively deny him a forum in which to vindicate his statutory rights.  (ECF No. 19 at pp. 14–17.)  Second, Plaintiff argues that the provision prevents him from vindicating a prevailing party's statutory right to reasonable attorney's fees and costs under the FLSA.  (ECF No. 19 at p. 5–7).

As Defendant notes, the Arbitration Clause also provides that arbitration be conducted "in accordance with the rules then in effect of the American Arbitration Association" (the "AAA"). (Employment Agreement, ECF No. 9-4 § 11(a).)  The court reviews here the relevant aspect of the AAA Employment Arbitration Rules and Employment/Workplace Fee Schedule (provided at ECF Nos. 22-3, 22-4, respectively).   The AAA Employment/Workplace Fee Schedule caps an individual's filing fee at $350 and shifts all ensuing arbitration costs onto the employer party, including but not limited to the arbitrator's compensation and expenses.  (Fee Schedule, ECF No. 22-4.)  While it permits an individual to agree to pay portions of those fees, for example, the arbitrator's compensation and expenses, that is solely where the parties agree "post-dispute."  *Id.* Similarly, the AAA Employment Rules provide: "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards

of attorney's fees and costs, in accordance with applicable law." (AAA Rules, ECF No. 22-3 at R. 39.) Defendant argues that, should the court find Plaintiff's argument compelling on either ground, the court should instead, reflective of the policy favoring arbitration, sever the provision as the Arbitration Clause will continue with the application AAA Employment Rules.[5] (ECF No. 22 at pp. 3, 9.)

### 1. *Cost-Splitting*

"[C]laims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). "A fee-splitting provision can render an arbitration agreement unenforceable if, under the terms of the provision, an aggrieved party must pay arbitration fees and costs 'that are so prohibitive as to effectively deny the employee access to the arbitral forum.'" *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 181 (4th Cir. 2013) (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 554 (4th Cir. 2001)).

In determining whether the costs of arbitration are prohibitively high, courts in the Fourth Circuit assess the facts and circumstances of each individual case—considering "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.2d 549, 556 (4th Cir. 2001). The court considers such challenges on a "case-by-case basis." *Muriithi*, 712 F.3d at 181 (citing

---

[5] The court notes the Severability Clause at § 12(c) of the Employment Agreement: "If one or more of the provisions in this Agreement are deemed void by law, including, but not limited to, the covenant not to compete in Section 9, then the remaining provisions will continue in full force and effect." (ECF No. 9-4 at p. 8.)

*Bradford*, 238 F.2d at 556). Ultimately, "the party seeking to invalidate an arbitration agreement on this basis bears the 'substantial' burden of showing a likelihood of incurring prohibitive arbitration costs." *Id.* (quoting *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286–87 (4th Cir. 2007)).

In support of his showing, Plaintiff provides his declaration attesting to his annual gross income for the "past two years" of $58,843, as well as his "ordinary expenses," which left him with little to no disposable income. (Reed Decl., ECF No. 19-1.) He also provides the declaration of Larry Rute, a professional Arbitrator and Mediator, estimating the amount of time that would be incurred "through trial" (288 hours). (Rute Decl., ECF No. 19-2.) As Defendant notes in its reply (ECF No. 22 at pp. 7–8), Rute's calculation includes a significant error: Rute estimates a five-day hearing which he estimates would consume "200 hours." (Rute Decl., ECF No. 19-2 ¶ p. 8.) This is a mathematical impossibility. Instead, the court considers an estimate of 40 hours (eight hours for five days). Further, the court notes that Rute adds four hours for conferring with other arbitration panelists in the event of a multi-arbitrator panel; but the Arbitration Clause refers to a single arbitrator, and Rule 12 of the AAA Employment Arbitration Rules provides "If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator." (AAA Rules, ECF No. 22-3 at p. 16.) Crediting Rute's other estimated time expenditures (with which Defendant takes no issue), the estimated total amount of time incurred "through trial" would, therefore, be 124 hours, not 288. Using an average hourly rate of local arbitrators of $476.25, as provided by Plaintiff (ECF No. 19 at p. 21 n.6) and which Defendant does not contest, the estimated cost of arbitrating this matter is $59,055.00 for a one person panel, with Plaintiff obligated per the

Arbitration Clause to cover $29,527.50 of that, compared to the civil filing fee in this court of $405.

In its reply, Defendant argues that Plaintiff's assertions concerning potential costs are "speculative" and that Plaintiff has not met his burden to demonstrate that arbitration would be prohibitively costly pursuant to the terms of the Arbitration Clause. (ECF No. 22 at pp. 7–9.) The court disagrees. Plaintiff supports his argument with his attestation of his financial status under oath, Rute's opinion, and an uncontested estimated hourly rate for an arbitrator. Potential arbitration costs are not speculative simply by reason of the fact that they cannot be predicted with certainty; Plaintiff offers (with the above-noted exceptions) a fact-based, plausible estimate not based on mere conjecture.[6] The court is persuaded that Plaintiff has made the requisite showing based on what is known and available to him. Defendant's reference to *Muriithi v. Shuttle Exp., Inc.*, is unavailing. (ECF No. 22 at p. 7.) In that case, the plaintiff failed to establish the costs of arbitration. *See* 712 F.3d 173, 182 (4th Cir. 2013). Here, Plaintiff has not so failed. Based on the foregoing, Plaintiff has met its burden to support his argument of financial hardship.

The court concludes that $29,527.50 imposes a prohibitive financial burden on Plaintiff and may well exceed damages Plaintiff could expect were he to prevail on his FLSA claim. The court is persuaded that requiring Plaintiff to pay half his annual salary to arbitrate his claims would effectively deny him access to redress his grievance.

### 2. Attorney's Fees

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial,

---

[6] This is not unlike Maryland law permitting recovery of lost (future) profits for certain business torts and contract breaches based on reasonable certainty and foreseeability. *See, e.g., CR-RSC Tower I, LLC v. RSC Tower I, LLC,* 429 Md. 387 (2012); *Ingram v. Cantwell-Cleary Co.,* 260 Md. App. 122 (2023).

forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Under 29 U.S.C. § 216(b), "[t]he court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The rights conferred by the FLSA, including the right of a prevailing plaintiff to recover attorney's fees and costs, cannot be waived or abridged by contract. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Thus, an agreement to arbitrate a statutory claim "may nonetheless be unenforceable if the terms of the agreement prevent the plaintiff from effectively vindicating his statutory rights." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 289 (4th Cir. 2007). The Arbitration Clause, however, provides: ". . . each of us shall separately pay our counsel fees and expenses."[7] (ECF No. 9-4 at p. 8.) In view of the foregoing, this provision is unenforceable.

### 3.  *Severability*

As recognized above, the cost-splitting and the attorney's fees portions of the Arbitration Clause create enforceability problems. But the Arbitration Clause's requirement of compliance with the AAA Rules and Fee Schedule presents no such issue—such rules cap Plaintiff's costs at $350 and allow the arbitrator to award attorney's fees where appropriate. The question, then, is whether the court should, as Defendant argues, sever these offending portions of the Arbitration Clause. *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 292 (4th Cir. 2007) (citing *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005), for the following: "If all the provisions of the arbitration clause are enforceable, then the court must compel arbitration

---

[7] Defendant's argument that the provision refers solely to the "initial responsibility for payment during the arbitration process" is not compelling. (ECF No. 22 at p. 2.) The cost-splitting and attorney's fees provisions contain no such disclaimer or limiting language.

according to the terms of the agreement. If, however, some or all of its provisions are not enforceable, then the court must determine whether the unenforceable provisions are severable").

"[U]nenforceable provisions in arbitration clauses are severable if they don't go to the essence of the contract." *Beckley Oncology Assocs., Inc. v. Abumasmah*, 993 F.3d 261, 266 (4th Cir. 2021) (citing *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 292 (4th Cir. 2007)). Indeed, a validity challenge to an arbitration agreement "requires [the court] to discern which parts are the agreement are invalid." *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 176 (4th Cir. 2025). "When a contract contains some valid provisions and some invalid ones, the court must decide if it can sever the valid provisions and enforce the rest of the agreement." *Id.* Further, in Maryland, an unenforceable clause "can be severed from the instrument without destroying the instrument's overall validity or validity of any other provisions if it is not so interwoven as to be logically inseparable from rest." *Sami v. Sami*, No. 1490, 2023 WL 4072158, at *5 (Md. June 20, 2023) (quoting *Connolley v. Harrison*, 23 Md. App. 485, 488 (1974)).

The Southern District of West Virginia's decision in *Barach v. Sinclair Media III, Inc.* provides helpful guidance. In *Barach*, a plaintiff in an Age Discrimination in Employment Act and West Virginia Human Rights Act case challenged the arbitration clause at issue on the basis of, *inter alia*, the presence fee-shifting provisions. 392 F. Supp. 3d 645, 652 (S.D.W.Va. 2019). The court concluded that fee-shifting was "inconsistent" with the two statutes and that the fee-shifting provisions were thus unenforceable. *Id.* at 653. The court severed the offending provisions, explaining:

> Lastly, Plaintiff implicitly argues that, because the Court finds the fee-shifting provisions unenforceable, the arbitration clause as a *whole* is unenforceable. *See Resp. in Opp. to Def's Mot. to Dismiss*, at 4, 7, 11. However, because the employment contains a severability clause, and there is no evidence that the unenforceable fee-shifting provision goes to the "essence" of the contract, the

21

> appropriate remedy is to sever *only* the fee-shifting provisions, and hold that the remaining clauses are enforceable. *See In re Cotton Yarn*, 505 F.3d at 292 (holding that, "if the district court concludes that the [provision] is unenforceable, the district court must then consider whether severance of the . . . provisions, rather than invalidation of the arbitration agreements, would be the appropriate remedy."). Thus, despite the unenforceable fee-shifting provision, the agreement to arbitrate remains enforceable.

*Id.* at 655 (footnotes omitted); *see Beckley Oncology Assocs., Inc. v. Abumasmah*, 993 F.3d 261, 266 (4th Cir. 2021) (citing *Barach* in holding "an unenforceable provision in an arbitration agreement was severable, because it didn't go to the essence of the contract").

The court finds that the cost-splitting and attorney's fees provisions do not go to the essence of the Employment Agreement. Nothing in the Employment Agreement or the parties' papers suggests the parties intended the Arbitration Clause to be conditional on enforcement of the cost-splitting and/or attorney's fees provisions. *See Johnson*, 131 F.4th at 176, *supra*. This conclusion is further bolstered by the requirement that any arbitration be conducted in accordance with the AAA Rules. Accordingly, the "appropriate remedy" is to sever only the cost-splitting and attorney's fees aspects of the Arbitration Clause, and to hold the Arbitration Clause otherwise enforceable.[8]

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 9) will be granted in part, and Plaintiff's Motion (ECF No. 23) will be denied. The court will grant Defendant's Motion seeking to compel arbitration, but will exercise its discretion to stay, not dismiss, the action during the pendency of the arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 476–77 (2024) (holding "[w]hen a federal court finds that a dispute is subject to arbitration, and a

---

[8] Because the court will sever these provisions, the court declines to reach Defendant's argument that "Plaintiff's challenges can be decided by the arbitrator." (ECF No. 22 at p. 14.)

party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration"); *but see Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 243–44 (4th Cir. 2025) (interpreting *Smith* and explaining "*Smith* says nothing about what happens when the appealing party never requests a stay").

September 16, 2025                                          /S/

                                                   _____

                                                   Julie R. Rubin
                                                   United States District Judge