IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID REED,

   *Plaintiff*,

  v.

LTN GLOBAL COMMUNICATIONS, INC.,

   *Defendant*

Civil No.: **1:24-cv-03649-JRR**

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court are Defendant LTN Global Communications, Inc.'s Motion to Dismiss for Failure to Prosecute (ECF No. 31; "Defendant's Motion") and Plaintiff's Motion to Amend Order to Allow Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 40; "Plaintiff's Motion").[1]  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).

## I.  <u>Relevant Background</u>

On December 18, 2024, Plaintiff initiated this action on behalf of himself and those similarly situated for "unpaid straight time and overtime compensation and related penalties and damages" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Missouri Minimum Wage Laws ("MMWL").  (ECF No. 1 ¶ 1.)  On February 21, 2025, Defendant moved to dismiss Plaintiff's claims and compel arbitration pursuant to the Arbitration Clause in the Employment Agreement.  (ECF No. 9.)  On September 16, 2025, the court granted the Motion in part, ordering that this action be arbitrated and staying this case pending arbitration.  (ECF No. 27.)  *See Smith v. Spizzirri*, 601 U.S. 472, 476–77 (2024) (holding that "[w]hen a federal court

---

[1] The court uses the terms defined in its memorandum opinion at ECF No. 26.

finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration"). The court also ordered the parties to file joint status reports on the earlier of every 90 days or upon the conclusion of the arbitration. (ECF No. 27.)

Notwithstanding this court's order, to date, this case has not proceeded to arbitration. Instead, on December 15, 2025, Defendant filed a status report advising that it had "not received any communication or notice from Plaintiff or his counsel," and that it was "not aware of Plaintiff taking any steps to submit the claims asserted in his Complaint (ECF No. 1) to arbitration." (ECF No. 30.) Defendant concurrently filed its instant Motion for dismissal of Plaintiff's Complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (ECF No. 31.) The following day, Plaintiff submitted a status report,[2] advising that he "anticipates filing a Motion for Interlocutory Appeal" regarding the court's order directing the case to arbitration. (ECF No. 36.) In the status report, Plaintiff also asserts that "Defendant failed or refused to communicate with Plaintiff prior to submitting its status report." *Id.* Then, more than a month later, Plaintiff filed his Motion. (ECF No. 40.) In all, Plaintiff waited more than four months to seek leave to file his Motion after the court directed this case to arbitration.

II.    **Legal Standard**

A.  **Certification for Interlocutory Appeal**

The federal courts of appeals generally have jurisdiction over "final decisions of the district courts of the United States." 28 U.S.C. § 1291. A district court may, however, certify an order for interlocutory appeal where it is of the opinion that such order (1) "involves a controlling

---

[2] On December 16, 2025, Plaintiff sought leave to file his status report out of time. (ECF No. 33.) Plaintiff attached his status report to that motion. (ECF No. 33-1.) The court granted that motion on December 18, 2025, at which time the Clerk's Office docketed Plaintiff's status report. (ECF No. 36.)

question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  While all statutory criteria must be satisfied, the "decision to certify an interlocutory appeal is firmly in the district court's discretion."  *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (citations omitted).  Importantly, "interlocutory appeal is an exception to the general rule that appellate review must await final judgment." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 196 (2019).  It "should be used sparingly and thus that its requirements must be strictly construed.'"[3]  *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)).

### B.  Motion to Dismiss for Failure to Prosecute

Federal Rule of Civil Procedure 41(b) provides: "If the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it."  FED. R. CIV. P. 41(b); *see* Local Rule 103.8 (D. Md. 2025) (regarding dismissal for want of prosecution).  The court also "has the 'inherent power' to dismiss an action for want of prosecution," power that it "derives from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), *as amended* (June 10, 2019) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

---

[3] It is not clear to the court if Plaintiff challenges this statement of the law.  (ECF No. 40-1 at p. 3 n.1.)  If so, based on a wealth of caselaw, this court disagrees.  *See, e.g.*, *Does v. Musk*, No. CV 25-0462-TDC, 2026 WL 242062, at *1 (D. Md. Jan. 29, 2026) (stating same); *Lacks v. Ultragenyx Pharm., Inc.*, 768 F. Supp. 3d 705, 734 (D. Md. 2025) (stating same); *Ekstrom v. Cong. Bank*, No. CV ELH-20-1501, 2021 WL 119000, at *2 (D. Md. Jan. 13, 2021) (stating same); *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 949 (D. Md. 2019) (stating same).

**III.    Analysis**

**A.  Plaintiff's Motion to Amend Order to Allow Interlocutory Appeal**

As discussed above, Plaintiff bears the burden to demonstrate that interlocutory appeal is warranted because the order at issue (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

"The United States Court of Appeals for the Fourth Circuit has defined a controlling question of law to be a 'pure question of law,' that is, 'an abstract legal issue that the court of appeals can decide quickly and cleanly.'"  *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (quoting *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017)).  Such a question is one the Fourth Circuit can rule on "without having to delve beyond the surface of the record in order to determine the facts."  *United States ex rel. Michaels*, 848 F.3d at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)).  Appellate review of an interlocutory order is not appropriate, however, where "the question presented 'turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case.'"  *Id.* (quoting *McFarlin*, 381 F.3d at 1259).

"If 'controlling law is unclear,' there may be substantial grounds for difference of opinion for purposes of § 1292(b)."  *Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950 (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).  A lack of unanimity among courts or a lack of relevant authority is not, alone, sufficient grounds.  *Id.* (first citing *North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D.N.C. 1995); and then citing *Union County v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th Cir. 2008)).  Instead, "courts find substantial grounds 'where the circuits are in dispute on the question and the court of appeals of

the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950 (quoting *Couch*, 611 F.3d at 633). "[A] party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds." *Lacks v. Ultragenyx Pharm., Inc.*, 768 F. Supp. 3d 705, 734 (D. Md. 2025) (quoting *Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950).

"Finally, under the material-advancement prong, certification of an interlocutory appeal is appropriate only 'in exceptional situations in which doing so would avoid protracted and expensive litigation.'" *Ekstrom v. Cong. Bank*, No. CV ELH-20-1501, 2021 WL 119000, at *3 (D. Md. Jan. 13, 2021) (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. Apr. 26, 1989)). In evaluating this factor, courts consider "whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Id.* (quoting *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 773 (D. Md. 2016)). As the Honorable Theodore D. Chuang of this court recently explained:

> More often, an interlocutory appeal can cause "delay, adding costs and diminishing coherence[]" and "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson*, 515 U.S. at 309. Thus, under this prong, the mere fact that an issue's "resolution at this time may save pre-trial and trial effort and expense is not determinative"; rather, "the question best adapted" to interlocutory review is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin*, 1989 WL 42583, at *5 (citing *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986)); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (stating that this element is met when "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the

litigation"). Where litigation is likely to continue in a significant way regardless of the resolution of an interlocutory appeal, the appeal does not materially advance the termination of the case. *See Hall v. Greystar Mgmt. Servs.*, 193 F. Supp. 3d 522, 528 (D. Md. 2016) (declining to certify an interlocutory appeal where a reversal would likely lead to re-filed litigation in state court).

*Does v. Musk*, No. CV 25-0462-TDC, 2026 WL 242062, at *2 (D. Md. Jan. 29, 2026).

As to the first element, Plaintiff contends that the controlling question of law at issue is "whether the proper forum for litigation is arbitration," specifically because he "disputes the determinations relied upon by the [c]ourt in its arbitration ruling."[4]  (ECF No. 40-1 at p. 4.) Plaintiff's argument fails to engage the authority this court relied upon in its holding; instead, Plaintiff relies on general principles and his disagreement with the court's holding.  At bottom, Plaintiff merely challenges whether the court "properly applied settled law to the facts or evidence of a particular case."  *See United States ex rel. Michaels*, 848 F.3d at 341, *supra*.  As set forth above, this is insufficient to satisfy this element.[5]  *See id.*  Therefore, Plaintiff fails to meet his burden to show that certification of an interlocutory appeal is warranted.  Nonetheless, for

---

[4] Plaintiff contends this misstates his argument. (ECF No. 42 at p. 3.)  The court disagrees.  In his Motion, Plaintiff expressly tees up the issue as follows: "The question on which Plaintiff seeks appellate review—whether the proper forum for litigation is arbitration—is a pure question of law." (ECF No. 40-1 at p. 4.)  But, in his reply, Plaintiff asks the court to view his request through a policy lens, asserting that the controlling question of law at issue concerns "mixed authorities suggesting other remedies that should be considered in determining contract clauses that run afoul of public policy, where the parties have an expressed remedy in the core terms of the contract if such terms limit or prohibit one of the parties from vindicating their statutory rights." *Id.*  Plaintiff's effort to revise the question (or the approach to the question)—which, again, fails to engage with the authority and analysis upon which the court relied in its opinion—is not persuasive.  Whether it's characterized as a policy discussion or something else, Plaintiff's request for certification is rooted solely in his disagreement with the court's ruling upon the specific facts at issue in this case.  Plaintiff fails to demonstrate a controlling question of law upon which there are grounds for substantial disagreement.

[5] Further, were Plaintiff's broad framing of the "controlling question" a proper basis to certify an interlocutory appeal, the exception would swallow the rule—which is to say, if an interlocutory appeal were warranted any time a party wished to challenge "whether the proper forum for litigation is arbitration," interlocutory appeal would be the norm on motions to compel arbitration. *See Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 196 (2019), *supra.  Cf. Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (noting of the Federal Arbitration Act, "[w]hen a court compels arbitration, . . . Congress made clear that, absent certification of a controlling question of law by the district court under 28 U.S.C. § 1292(b), the order compelling arbitration is not immediately appealable").

completeness, the court considers the remaining elements that similarly do not favor certification here.

Second, Plaintiff contends there are substantial grounds for difference of opinion as to the court's decision to sever the cost-splitting and attorney's fees provisions set forth in the Arbitration Clause because "[i]t is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships." (ECF No. 40-1 at pp. 5–6, quoting *Transamerica Premier Life Ins. v. Selman & Co.*, LLC, 401 F. Supp. 3d 576, 593 (D. Md. 2019).) Plaintiff's challenge focuses on general principles and not the specifics of the court's decision, and omits to consider the severability clause in the Employment Agreement (which the court recognizes Plaintiff argues does not apply) as well as the Fourth Circuit authority upon which the court relied as to same. Here again, Plaintiff understandably quarrels with the outcome, but he fails to demonstrate substantial grounds for difference of opinion on the specific circumstances here. For example, Plaintiff does not argue that circuits are in dispute on this issue, that the appellate courts have not yet weighed on this issue, or that this issue presents a novel and difficult question of first impression. *See Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950, *supra*. Instead, Plaintiff's argument is one merely of "disagreement with the decision of the district court," which "does not create substantial grounds." *See Lacks*, 768 F. Supp. 3d at 734, *supra*.

Finally, on the third prong, while the court appreciates that permitting appeal would allow Plaintiff to raise his challenge to forum now rather than later, "the mere fact that an issue's 'resolution at this time may save pre-trial and trial effort and expense is not determinative.'" *See Does*, 2026 WL 242062, at *2, *supra*. Such argument is not unique here; again, upon such a question, this factor would always weigh in favor of appeal where a court compels a dispute to

7

arbitration. Plaintiff does not present any basis to conclude that appeal here would be on a "narrow question of pure law whose resolution" would be "completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Does*, 2026 WL 242062, at *2 (quoting *Fannin*, 1989 WL 42583, at *5); *see Hutchens v. Cap. One Servs., LLC*, No. 3:19CV546, 2020 WL 6121950, at *6 (E.D. Va. Oct. 16, 2020) (noting that "[c]ourts therefore 'use a case-specific analysis to determine whether the time and expense saved on interlocutory appeal would 'materially advance the ultimate termination of the litigation'") (quoting *Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, No. 3:14CV706, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015)).

While the court appreciates that this court has previously found interlocutory appeal of an arbitration question would materially advance termination of the litigation, *see, e.g.*, *Brooks v. Cir. City Stores, Inc.*, No. CIV. A. DKC 95-3296, 1997 WL 679899, at *2 (D. Md. Sept. 16, 1997), that decision does not support that anytime an arbitration issue is raised, interlocutory appeal is warranted. As another court in this Circuit explained:

> [P]ermitting this interlocutory appeal would not materially advance the litigation. Without an appeal, Plaintiff will proceed to arbitration for what should be a relatively direct and concise proceeding pertaining only to her account. Once arbitration is completed, this litigation will essentially be over, with the exception of confirming the award, if that is applicable. If the Court allowed this interlocutory appeal to proceed, the case would have to work its way through the appellate process before the parties could proceed to arbitration, and ultimately, to the conclusion of this litigation.

*Stephens v. Wachnovia Corp.*, No. 3:06CV246, 2008 WL 1820928, at *4 (W.D.N.C. Apr. 21, 2008) (footnote omitted). The court is not persuaded that interlocutory appeal would materially advance resolution of this matter; while appeal might pose some measure of time and expense savings, even that is utterly murky.

For the foregoing reasons, the court will deny Plaintiff's Motion to amend its order to certify the matter for interlocutory appeal.[6]

## B. Defendant's Motion to Dismiss for Failure to Prosecute

As explained *supra*, under Rule 41(b), the court may dismiss an action for want of prosecution if a plaintiff "fails to prosecute or to comply with . . . a court order." FED. R. CIV. P. 41(b). In "recognizing the severity of dismissal as a sanction," the Fourth Circuit has identified four criteria (though not a rigid test) that "guide a district court's discretion in dismissing a case under Rule 41(b)." *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), *as amended* (June 10, 2019). The criteria include: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Id.* (quoting *Hillig v. C.I.R.*, 916 F.2d 171, 174 (4th Cir. 1990)). Importantly, however, the factors are to be dispensed with as a four-part test; instead "the propriety of an involuntary dismissal ultimately depends on 'the facts of each case.'" *Id.* (quoting *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)).

Defendant does not address these factors in its Motion. Instead, it argues this case should be dismissed for because (1) Plaintiff has not yet brought his claims to arbitration in accordance with this court's order; and (2) Plaintiff "has flouted" this court's memorandum opinion and order by initiating a new lawsuit based on a related claim in Missouri state court. (ECF No. 31-1 at pp.

---

[6] It bears observation, as Defendant noted in its papers and the court mentioned in its above introduction, Plaintiff waited more than four months after this court's order to make his request for certification—far in excess of the time limit for noticing an ordinary appeal of a final order. FED. R. CIV. P. 4(1)(1)(A). Although timeliness is not a basis for the court's ruling here, it seems rather at odds with the spirit of the federal rules to countenance that Plaintiff may sit on his hands for months and, only when prompted by a motion to dismiss for failure to prosecute, seek certification—especially where Plaintiff offers no explanation or justification for the delay. Moreover, any potential time savings Plaintiff purportedly seeks from interlocutory review is squarely belied by his months' long quiet absence from this action (in any forum). Nonetheless, Defendant does not mount a substantive timeliness challenge; and so the court cabins its analysis and basis for ruling to those substantive arguments raised.

4–5.)  The court construes Defendant's grounds to bear on the first and third factors above—the degree of Plaintiff's personal responsibility and a history of deliberate dilatory action.

First, as to Plaintiff's responsibility, the parties' arguments focus on who bore responsibility to initiate arbitration after this court entered its order directing this matter to arbitration.  As the Honorable Richard D. Bennett of this court has recently explained:

> Generally, the party invoking arbitration must file the arbitration claims. *See, e.g.*, *Farnsworth v. PublishAmerica, LLLP*, Civ. No. L-07-241, 2009 WL 10682047, at *3 (D. Md. Feb. 17, 2009) ("Since PublishAmerica is invoking the arbitration clause, PublishAmerica must file the arbitration claim."); *Siert v. Spiffy Franchising, LLC*, 758 F. Supp. 3d 1142, 1152 (N.D. Cal. 2024) ("[I]t is Plaintiffs who bring grievances against Defendants, not the reverse. Plaintiffs fail to explain why or how Defendants could be obliged to initiate arbitration against themselves under these circumstances."). Federal courts have recognized, however, that parties may contractually determine which party bears the burden to initiate arbitration. *See, e.g.*, *McGowan v. NetApp, Inc.*, 2024 WL 3970683, at *3 (N.D. Cal. Aug. 28, 2024). Thus, where parties dispute which party bears the burden to initiate arbitration proceedings, courts evaluate the plain text of the arbitration agreement itself. *See, e.g.*, *Briggs v. Nationstar Mortgage, LLC*, 2016 WL 2644902, at *2–*3 (N.D.W. Va. May 9, 2016) (beginning with text of arbitration agreement before turning to American Arbitration Association's Commercial Arbitration Rules to resolve contractual silence as to burden to initiate arbitration); *Mellien v. U-Drive Motors, LLC*, 2024 WL 3673705, at *3 (M.D. Fla. Aug. 6, 2024) (collecting cases where "courts typically look to the governing arbitration rules or the parties' contract to determine who bears th[e] responsibility" to initiate arbitration).

*MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*, No. CV RDB-24-3194, 2025 WL 2163052, at *11 (D. Md. July 30, 2025).

The Arbitration Clause at issue provides:

> **(a) Arbitration. Except as provided in subsection (b) below, I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any interpretation, construction, performance or breach of this**

10

> **Agreement, shall be settled by arbitration to be held in Montgomery County, Maryland in accordance with the rules then in effect of the American Arbitration Association. . . .**

(ECF No. 9-4 § 11(a)) (emphasis and bolding in original).  Contrary to Defendant's contention, the court does not agree that the Arbitration Clause expressly requires Plaintiff to initiate the arbitration.

The court thus considers the American Arbitration Association Employment/Workplace Rules referenced in the Arbitration Clause.[7]  The Rules provide that "[a]rbitration under an arbitration agreement naming the AAA shall be initiated by the initiating party (referred to as the 'claimant') filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement."[8]  And further: "In the event the parties dispute which party or parties should be the claimant(s) and which party or parties should be the respondent(s), the AAA may make an initial determination, subject to a final determination by the arbitrator."[9]  The Rules provided by Defendant in briefing the underlying motion to compel arbitration also contemplate a process where the parties jointly submit a matter to arbitration.  (ECF No. 22-3 at R. 4, setting forth initiation of arbitration either by "joint request" or, "[i]n the absence of joint request," on written notice by the initiating party.)

While Plaintiff's failure to initiate his arbitration claim certainly raises questions about his choices in prosecuting this action, the court is not persuaded that Plaintiff's failure to initiate arbitration supports dismissal for lack of prosecution.  But Plaintiff's failure to take any action for four months does not reflect the exercise of personal responsibility in the prosecution of his case.  Thus, the court does not find this factor weighs in either party's favor.

---

[7] AM. ARB. ASS'N, *Employment/Workplace Arbitration Rules and Mediation Procedures* (2025), https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf [https://perma.cc/F7LQ-MSWR].
[8] *Id.* at R-4(a)(i).
[9] *Id.* at R-4(b)(ii).

Second, Defendant has neither claimed nor asserted any prejudice as a result of the delay, and the court discerns none. This factor thus weighs against dismissal.

Third, Defendant's argument focuses on Plaintiff's decision to file a second, related action against Defendant in Missouri state court. The court is not persuaded that this allegation, especially standing alone, supports the conclusion that Plaintiff has engaged in deliberately dilatory behavior in this action. The court will leave it to the Missouri court to address the matter presently pending before it and take whatever action it deems proper.

The cases Defendant relies upon on this factor are similarly unpersuasive, as they concern more materially and egregious tactics and conduct, including flouting a court order for over a year and three months based on a plaintiff's contention that he would not pursue arbitration contrary to the court's order, *see Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844–45 (5th Cir. 2018), and repeated failures by a pro se party to comply with orders of the court for arbitration and status reports, *see Tinsley v. Quick & Reilly, Inc.*, 216 F.R.D. 337, 337 (E.D. Va. 2001). At this time, such circumstances are not present here. Accordingly, this factor does not favor dismissal.

Finally, as mentioned, Defendant fails to address the fourth factor as to whether a more effective and less drastic sanction than dismissal exists. The court does discern a more effective and less drastic burden—clarifying its order and directing the parties' compliance once again. In view of the foregoing analysis on Plaintiff's Motion, and as set forth below, Plaintiff is now advised that failure to initiate arbitration and advise the court of same will result in dismissal of this case pursuant to Rule 41(b).

Accordingly, at this time, the court concludes that dismissal of this action is not warranted under Rule 41(b). In reaching this conclusion, the court is "mindful that sound public policy favors deciding cases on their merits and therefore . . . the power to dismiss must be exercised 'with

restraint.'" *Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 194 (4th Cir. 2020).  Defendant's Motion will therefore be denied.

## IV.    **Conclusion and Order**

Accordingly, for the foregoing reasons, it is this 6th day of April 2026,

**ORDERED** that Plaintiff's Motion (ECF No. 40) and Defendant's Motion (ECF No. 31) shall be, and are hereby, **DENIED**; and further it is

**ORDERED** that Plaintiff shall, within 30 days, submit this matter to arbitration in accordance with the court's memorandum opinion and order at ECF Nos. 26 and 27; and within seven (7) days of such arbitration initiation, Plaintiff shall file a line advising the court of same. Failure to comply with this order will result in dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b) without further notice; and further it is

**ORDERED** that, pursuant to the court's order at ECF No. 27, the parties shall confer prior to the filing of all joint status reports and then subsequently file such status reports jointly; should a party instead file an individual status report, the party shall state therein all efforts made to confer with opposing counsel (including dates, times, and communication methods) in advance of filing.


/S/

_____
Julie R. Rubin
United States District Judge